IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

GLORIA J. ALLEN, as next          *
friend of J.D.L., JR.,            *
M.A.M., and Z.G.L.,               *
minor children of the decedent,   *
Jeremy D. Love, Sr., and          *
                                  *
GLORIA J. ALLEN, as               *
Administratrix of the Estate of   *
Jeremy D. Love, Sr.,              *
                                  *
          Plaintiff,              *
                                  *
     v.                           *          CV 110-022
                                  *
CITY OF GROVETOWN, through the    *
Mayor, George James, in his       *
official capacity,                *
DIRECTOR/CHIEF AL ROBINSON,        *
individually and in his official  *
capacity as an officer with the   *
Grovetown Police Department,      *
SERGEANT MIKE FREEMAN,            *
individually and in his official  *
capacity as an officer with the   *
Grovetown Police Department,      *
OFFICER CHESTER HOPKINS,          *
individually and in his official  *
capacity as an officer with the   *
Grovetown Police Department,      *
and SERGEANT CHRISTOPHER HARDEN,  *
individually and in his official  *
capacity as an officer with the   *
Grovetown Police Department,      *
                                  *
          Defendants.             *

**O R D E R**

     Presently before the Court is Defendants' motion for
partial judgment on the pleadings.  (Doc. no. 13.)  Defendants

request that the Court dismiss Plaintiff's claims against the City of Grovetown ("Grovetown"), Director of Grovetown Department of Public Safety ("GDPS"), Al Robinson ("Robinson"), and Sergeant Christopher Harden ("Harden"). Upon due consideration, Defendants' motion is **GRANTED**.

## I. BACKGROUND

On February 17, 2010, Plaintiff Gloria J. Allen, on behalf of her grandchildren and as administratrix of her deceased son's estate, filed a complaint in this Court within which she asserts various state and federal claims arising from the arrest and subsequent suicide of her son, Jeremy D. Love, Sr. ("Love"). The pertinent facts, as set forth in the complaint, are outlined below.

### A. Arrest and Processing

On April 28, 2008, for reasons not explained in the complaint, several GDPS officers were at Love's home questioning him about his "condition." (Compl. ¶ 23.) During the course of this questioning, Defendant Harden arrived and arrested Love. (Id. ¶¶ 25 & 27.) Harden indicated that he was arresting Love because there had been too many calls in the past. (Id. ¶ 28.) According to the complaint, Harden arrested Love without objective evidence of probable cause. (Id. ¶¶ 26 & 27.)

Harden arrived with Love at the jail at approximately 5:30 p.m. (Id. ¶ 29.) Upon his arrival, Love was handed over to

2

Defendants Chester Hopkins ("Hopkins") and Mike Freeman ("Freeman") for processing. (Id. ¶ 31.) During processing, Hopkins and Freeman questioned Love regarding potential suicidal tendencies, pursuant to Grovetown and Robinson's training. (Id. ¶¶ 32 & 39.) At some point during intake, Love stated that he "didn't want to be here anymore" and mentioned leaving jail in a "pine box." (Id. ¶¶ 36 & 41.) Based upon Love's responses to the intake questions, Freeman initially marked "yes" with regard to a question on Love's intake questionnaire addressing the existence of suicidal tendencies, but later changed the answer to "no." (Id. ¶¶ 52 & 55.) At no time did Freeman or Hopkins contact a higher ranking supervisor, such as Robinson, or a physician or healthcare worker about how to handle Love. (Id. ¶ 59.)

### B. Suicide

After Love was processed, he was placed in a holding cell with three other inmates. (Id. ¶ 58.) The cell contained a shower with a curtain that obscured a jailer's view of the inmates while they were showering. (Id. ¶ 65.) The morning of April 29, 2010, Hopkins noticed that Love had hung, or was in the process of hanging, a bed sheet over the shower door support bar in his cell. (Id. ¶ 69.) Hopkins also observed that Love had hung, or was hanging, a bed sheet over the shower door and

3

tied it to the bar.[1] (Id. ¶ 70.) Hopkins ordered Love to remove the sheet(s), and Love complied. (Id. ¶¶ 80 & 92.) Hopkins informed Freeman about the incident. (Id. ¶ 82.)

Later that day, Hopkins and Freeman served breakfast and lunch to the inmates. (Id. ¶ 93.) After serving lunch, Freeman and Hopkins did not see Love again until approximately 1:25 p.m., when Freeman heard noise coming from his cell. (Id. ¶¶ 95 & 96.) Upon investigation, one inmate informed Freeman that Love was hanging by his neck from a sheet hung over the shower bar. (Id. ¶ 98.) Freeman called for assistance and entered the cell where he found Love hanging by his neck. (Id. ¶¶ 99 & 100.)

An officer cut the bed sheet and Love was lowered to the floor. (Id. ¶ 102.) Several officers and firefighters arrived, some of whom attempted to use CPR and an electronic defibrillator to revive Love. (Id. ¶ 103.) An ambulance eventually arrived and transported Love to Doctor's Hospital of Augusta, where he was pronounced dead upon arrival. (Id. ¶ 104.)

---

[1] The complaint is unclear as to the specific circumstances surrounding the hanging of the sheet(s). For instance, the Court is unclear whether Love utilized multiple sheets, one of which was hung over the shower door support bar and the other of which was hung over the shower door and tied to the bar, or whether Love utilized a single sheet that was tied to the support bar and hung over the shower door.

## C. Brief Summary of Claims[2]

In many respects Plaintiff's complaint is a "shotgun pleading." See Wagner v. First Horizon Pharm., 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense.") While the Court does not condone such pleadings and, in most instances, would strike the complaint and order a plaintiff to replead, this case does not warrant such action. Plaintiff's complaint is not "so extensive or confused as to make it impossible to determine what is being alleged or against whom" nor are the allegations contained therein "so vague or ambiguous that a responsive pleading could not possibly be framed." Streeter v. City of Pensacola, Fla., No. 3:05-cv-286, 2007 WL 4468705, at *2 (N.D. Fla. Dec. 18, 2007). This view of the complaint is also shared by Defendants, who have already filed an answer in this action. (See Doc. no. 13 at 3-4; Doc. no. 11.) Thus, the Court shall proceed with consideration of Defendants' motion for partial judgment on the pleadings.

On February 17, 2010, Plaintiff brought this suit pursuant to 42 U.S.C. § 1983 for numerous violations of the First, Fourth, and Fourteenth Amendments of the United States

---

[2] The Court shall only address those claims implicated by the current motion. Defendants expressly state in their motion that they are not attacking the sufficiency of Plaintiff's claims regarding Defendants Freeman and Hopkins; thus those claims will not be addressed herein. (See Doc. no. 13 at 2-3.)

Constitution; Plaintiff also asserts that Defendants violated various Georgia state laws, including O.C.G.A. § 51-1-6. Speaking generally, Plaintiff alleges that Defendant Harden arrested Love without probable cause and in retaliation for Love's exercise of protected rights. (Id. ¶¶ 166 & 167.) Plaintiff further contends that Grovetown's disorderly conduct ordinance is unconstitutional or, alternatively, was applied by Defendant Harden in an unconstitutional manner. (Id.) With regard to Love's suicide, Plaintiff has sued Defendant Robinson, the Chief of the Grovetown Police Department, in his individual and official capacities, and alleges, *inter alia*, that he failed to properly train or supervise Freeman and Hopkins as to suicide prevention. (Id. ¶ 141.) Plaintiff also contends that the following conditions, practices, and customs of the Grovetown jail increased the likelihood, and thus were a causative factor, of Love's suicide: the presence of a bar over the shower that was high enough and strong enough to support a human, the presence of bed sheets, the use of curtains in the shower that blocked a guard's view, the absence of an electronic surveillance system in the shower area, the number and location of staff on duty, and the lack of an established protocol to make medical or mental health personnel available when there is a possibility of suicide to give orders as to how to treat persons such as Love, including whether to have them committed once officers are exposed to one or more of the indicators that suicide is a possibility. (Id. ¶ 140.)

## II. DISCUSSION

### A. Applicable Legal Standards

    *1.   Motion for Judgment on the Pleadings*

The legal standards applicable to Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same. Roma Outdoor Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008) ("A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss.") A motion for judgment on the pleadings, like a motion to dismiss, does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1949-50 (2009). Further, "[i]n evaluating the sufficiency of a plaintiff's pleadings, [courts] make reasonable inferences in Plaintiff's favor, 'but [courts] are not required to draw plaintiff's inference.'" Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir.

2009) (citation omitted). "Unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Id.

In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations and punctuation omitted). The Court further stated that while there was no probability requirement at the pleading stage, id. at 556, "something beyond . . . mere possibility . . . must be alleged," id. at 557 (citing Durma Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)). Therefore, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 555, and sufficient to state a claim for "relief that is plausible on its face," id. at 570.

> *2. Section 1983 Claim: Heightened Pleading Standard and Qualified Immunity*

Defendants argue in their motion that Plaintiff's § 1983 claims are subject to a heightened pleading standard. (See Doc.

no. 13 at 8.) While the Court appreciates that this may have appeared to be the case at the time Defendants filed their motion, the Eleventh Circuit has recently stated that after the United States Supreme Court case of Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937 (2009), "it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." Randall v. Scott, 610 F.3d 701, 710 (11th Cir. 2010); see also Brown v. Benefield, No. 2:09-cv-901, 2010 WL 3892258, at *4 (M.D. Ala. Sept. 29, 2010) (acknowledging that after Randall a heightened pleading standard no longer exists for cases brought under § 1983 against an individual to whom qualified immunity defense is available).

Nevertheless, this Court must still address Robinson's and Harden's assertion of qualified immunity. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003)). "[Q]uestions of qualified immunity must be resolved 'at the earliest possible stage of litigation.'" Gonzalez, 325 F.3d at 1233 (citation omitted).

The qualified immunity analysis has three steps. First, the government official must prove that, with regard to the facts alleged in the complaint, he was acting within his discretionary authority. Id. at 1234. Here, it is clear and undisputed that Defendants Harden and Robinson were acting within their discretionary authority at the time of the events at issue. Thus, the burden shifts to Plaintiff to show that qualified immunity is not appropriate. See Cottone, 326 F.3d at 1358. The Supreme Court has established a two-part test to determine the applicability of qualified immunity. In making its determination, a court must ask, in no required order,[3] whether the plaintiff's allegations, taken as true, establish a constitutional violation, and whether the right was clearly established at the time of the public official's actions. Id.

**B. Defendant Harden**

Plaintiff first alleges that Defendant Harden arrested Plaintiff without probable cause and with deliberate indifference to, and in retaliation for, Love's exercise of protected rights. (Compl. ¶¶ 167 & 168.) Defendants contend that Plaintiff's claims as to Defendant Harden should be

---

[3] See Pearson v. Callahan, --- U.S. ----, 129 S. Ct. 808, 818 (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

dismissed because they lack a sufficient factual basis and consist largely of bare legal conclusions.

### 1. Federal Claims

#### i. False Arrest

"A warrantless arrest is constitutionally valid only when there is probable cause to arrest." <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1079 (11th Cir. 2003). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." <u>Case v. Eslinger</u>, 555 F.3d 1317, 1327 (11th Cir. 2009) (citation omitted). In the context of a qualified immunity defense, all that is required is "arguable probable cause," which exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1195 (11th Cir. 2002) (citation omitted).

With regard to the claims surrounding Love's April 28, 2008 arrest for disorderly conduct, Plaintiff's complaint largely contains labels and conclusions. For instance, Plaintiff states, "Defendant Harden did not see Love take acts amounting to probable cause to believe that Love was at that time in violation of a law." (Compl. ¶ 26.) Plaintiff continues, "Defendant Harden caused the arrest of Love without objective

11

evidence of probable cause at the time of the arrest." (Id. ¶ 27.) As stated above, the Court is not required to accept Plaintiff's legal conclusions as true, Iqbal, 129 S. Ct. at 1949-50, nor is it required to accept unwarranted deductions of fact, Sinaltrainal, 578 F.3d at 1260.

Beyond bare conclusions, Plaintiff provides the Court with two brief and ambiguous factual statements that do little, if anything, to advance her claim of false arrest. For example, Plaintiff asserts in the complaint that two non-arresting officers, "Rocky" and Michael Brown, "did not believe Love needed to be arrested." (Compl. ¶ 24.) The Court notes that Plaintiff does not allege that the two officers believed there was no probable cause to arrest Love, but rather Plaintiff alleges that the officers believed that Love did not *need* to be arrested. The differences between these two assertions are significant; police officers have broad discretion in deciding whether or not an arrest is warranted when probable cause exists. The Court is unable to conclude that this statement of fact, standing alone or even when considered in conjunction with the other allegations in the complaint, raises Plaintiff's right to relief "above the speculative level." Twombly, 550 U.S. at 555.

The only other allegation of fact in the complaint that addresses Love's actual arrest is equally unhelpful. Plaintiff asserts the following: "Defendant Harden indicated he was

12

arresting Love because 'they' had too many calls in the past."
(Compl. ¶ 28.) However, Harden's "[s]ubjective intentions play
no role in ordinary, probable-cause Fourth Amendment analysis."
See Whren v. United States, 517 U.S. 806, 813 (1996). "'[T]he
fact that [an] officer does not have the state of mind which is
hypothecated by the reasons which provide the legal
justification for the officer's action does not invalidate the
action taken as long as the circumstances, viewed objectively,
justify that action.'" Id. (quoting Scott v. United States, 436
U.S. 128, 136 (1978)). Thus, this factual assertion also fails
to sufficiently support Plaintiff's bare conclusion that no
probable cause existed because it does not address the objective
circumstances surrounding the arrest.

Ultimately, Plaintiff's factual allegations "stop[] short
of the line between possibility and plausibility of 'entitlement
to relief.'" Iqbal, 1295 S. Ct. at 1949 (citation omitted).
Plaintiff's complaint lacks the facts necessary to overcome
Defendants' motion, at least with regard to her false arrest
claim.[4] See Melendez v. Florida, No. 10-22269, 2010 WL 3447209,
at *2 (S.D. Fla. July 28, 2010) (finding plaintiff's allegations
were completely insufficient to state a claim for false arrest

---

[4] For instance, Plaintiff fails to include in the complaint an
explanation as to why the police were at Love's house, what Love was doing
when the police arrived, and what occurred when the police did arrive. The
Court finds it particularly problematic that there is not a single fact in
the complaint that addresses Love's actual conduct leading up to his arrest.

13

after plaintiff alleged he was falsely accused of disorderly conduct and arrested without probable cause).

Furthermore, Defendants correctly assert that even if the disorderly conduct ordinance was, as alleged, unconstitutional, Plaintiff has still failed to present allegations to overcome Harden's qualified immunity defense. Plaintiff makes no allegations that, "[a]t the time of [Love's] arrest, the [ordinance] had . . . been declared unconstitutional, and therefore it could not have been apparent to [Harden] that he was violating [Love's] constitutional rights." See Cooper v. Dillon, 403 F.3d 1208, 1220 (11th Cir. 2005). Nor does Plaintiff provide any other factual allegations that could lead one to reasonably infer that the state of the disorderly conduct ordinance gave Harden "fair warning" that his conduct was unlawful, assuming probable cause existed to arrest Love in the first place. Id.

Accordingly, Plaintiff's allegations are insufficient to state a claim for false arrest, and thus this claim should be dismissed.[5]

---

[5] Because Plaintiff has failed to state a claim for false arrest, and thus has not sufficiently alleged that Love's constitutional rights were violated, the Court need not address claims against Harden in his official capacity. See Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008) ("Without an underlying violation of [the defendant's] constitutional rights . . . [the County] cannot be liable on the ground that its policy caused a constitutional violation.")

Even if Plaintiff had sufficiently pled facts showing a constitutional violation, the official capacity claim would still be dismissed due to Plaintiff's failure to provide facts, beyond conclusory allegations, demonstrating a city policy or custom that constituted deliberate indifference and Plaintiff's failure to set forth any specific facts as to

### ii. Deliberate Indifference and Retaliation

Plaintiff states in a single sentence that Defendant Harden "caused the arrest of Love in deliberate indifference to and in retaliation for Love's exercise of protected rights." (Compl. ¶ 168.) Plaintiff provides no explanation or indication as to what protected activity Love was engaged in at the time of his arrest; in fact, Plaintiff provides no facts at all regarding Love's actions prior to his arrest. Plaintiff's "deliberate indifference" and "retaliation" claims against Defendant Harden are thus even more conclusory than those discussed above and likewise should be dismissed. These bare conclusions, without more, are insufficient to state a claim upon which relief may be granted.

### 2. State Claims

In addition to the federal claims, the complaint alleges that Defendant Harden falsely arrested Love under state law. "A suit against a public officer acting in his or her official capacity will be barred by official immunity unless the public officer (1) negligently performed a *ministerial duty*, or (2) acted with actual malice or an actual intent to cause injury while performing a *discretionary* duty." Lincoln Cnty. v. Edmond, 231 Ga. App. 871, 874 (1998) (emphasis in original).

---

how any policy or custom caused the violation. See McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) ("[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.").

Under Georgia law, "a warrantless arrest for conduct occurring in an officer's presence is a discretionary act that will not give rise to personal liability unless the officer acted with actual malice or actual intent to cause injury." Selvy v. Morrison, 292 Ga. App. 702, 704 (2008). Actual malice is defined as a "deliberate intention to do wrong" and "requires more than harboring bad feelings about another." Adams v. Hazelwood, 271 Ga. 414, 415 (1999). "Malice may be inferred from a total lack of probable cause. The existence of probable cause is a jury question where the facts regarding probable cause are disputed and a question of law for the court when the relevant facts are undisputed." Jones v. Warner, 301 Ga. App. 39, 41 (2009) (quoting Arbee v. Collins, 219 Ga. App. 63, 64 (1995)). Finally, "the subjective mental state of a public officer or employee is irrelevant unless that mental state prompts the public officer or employee to intend a legally unjustifiable action." Adams, 271 Ga. at 415.

Once again, the Court is forced to consider Defendants' motion based upon bare conclusions and no objective facts regarding Love's arrest. There is little in Plaintiff's complaint regarding Love's arrest that could be said to raise Plaintiff's right to relief above a speculative level. Plaintiff argues that her allegation that Harden "indicated he was arresting Love because 'they' had too many calls in the past" is evidence of actual malice. (Compl. ¶ 28.) The Court

finds, however, that this allegation, standing alone, cannot be said to show "a deliberate intention to do wrong." See Adams, 271 Ga. at 415. Furthermore, as stated above, "the subjective mental state of a public officer or employee is irrelevant unless that mental state prompts the public officer or employee to intend a legally unjustifiable action." Id. at 415. In this instance, it is the opinion of this Court that there are no facts—only bare conclusions—to support the allegation that Love's arrest was a "legally unjustifiable action."

Based upon the foregoing, Plaintiff's state law claim of false arrest should be dismissed as barred by Harden's official immunity.


**C. Defendant Robinson**

Plaintiff has brought various federal and state law claims against Defendant Robinson in his individual supervisory capacity, as the person holding the position responsible for oversight of the jail and the training of Defendants Freeman and Hopkins. (Compl. ¶ 134.) The crux of Plaintiff's argument as to Defendant Robinson can be summarized as follows: if better policies and/or training programs had been in place, Love would have been classified as a suicide risk and would not have been placed in an unmonitored cell containing the items he ultimately used to hang himself.

*1. Section 1983 Claims*

Plaintiff has brought suit against Defendant Robinson individually in his supervisory capacity pursuant to 42 U.S.C. § 1983 for his actions and/or inaction that allegedly contributed to Love's death. Pretrial detainees like Love have Fourteenth Amendment due process rights,[6] which include the "right to be protected from self-inflicted injuries, including suicide." Cook v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1115 (11th Cir. 2005) (citation omitted). "In a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under . . . the . . . fourteenth amendment, the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life." Cagle v. Sutherland, 334 F.3d 980, 986 (11th Cir. 2003) (quoted source omitted). In the context of a prison suicide, a showing of deliberate indifference "'requires a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur.'" Id. at 986 (emphasis in original) (quoting Popham v. City of Talladega, 908 F.2d 1561, 1563 (11th Cir. 1990)). "'[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of

---

[6] The Court notes that the "Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees the right to basic necessities that the Eighth Amendment guarantees convicted persons." Gish, 516 F.3d at 954. Thus, "it makes no difference whether [Love] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.'" Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (citation omitted).

prisoners.'" Id. (quoting Tittle v. Jefferson Cnty. Comm'n, 10 F.3d 1535, 1540 (11th Cir. 1994)).

"The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d 1352, 1360 (11th Cir. 2003). "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 129 S. Ct. at 1948.

"Supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1308 (11th Cir. 2009).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

19

<u>Mathews v. Crosby</u>, 480 F.3d 1265, 1270 (11th Cir. 2007).

Plaintiff does not allege that Defendant Robinson personally participated in the alleged constitutional violation; thus the issue here is whether the facts, as stated in the complaint, support the necessary causal connection between Robinson and the alleged constitutional violation. Plaintiff does not allege a history of widespread abuse nor does she allege facts that create an inference that Defendant Robinson directed his subordinates to act unlawfully or was aware they were acting unlawfully and failed to stop them from doing so. Similarly, Plaintiff does not allege that the constitutional violation was the result of any affirmative policy or custom instituted by Defendant Robinson.

The crux of Plaintiff's claim against Defendant Robinson, individually, is that he failed to properly train or supervise Defendants Harden and Freeman in the methods of suicide prevention and thus directly contributed to Love's death.[7] "Only when the failure to train amounts to 'deliberate indifference' can it properly be characterized as the 'policy' or 'custom'

---

[7] The Court recognizes that in alleging virtually every possible variation of a § 1983 claim in a prison suicide case, Plaintiff states that Defendant Robinson "knew or should have known that the Defendant City, as a matter of practice and custom, had dangerous condition [sic] in the jail that made an attempt at suicide more likely to be successful . . . ." (Compl. ¶ 143.) To the extent Plaintiff is alleging that Defendant Robinson is personally responsible for these "dangerous" conditions, the Court finds that Plaintiff has failed to allege facts demonstrating "deliberate indifference" to Love's constitutional rights. See Gish, 516 F.3d at 954 ("To be deliberately indifferent to a strong likelihood that [a] prisoner will commit suicide, [a jail official] must be subjectively aware that the *combination* of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide.").

that is necessary for section 1983 liability to attach."
Belcher v. City of Foley, Ala., 30 F.3d 1390, 1397 (11th Cir.
1994) (citations omitted). "To establish a defendant's
deliberate indifference, the plaintiff has to show that the
defendant had '(1) subjective knowledge of a risk of serious
harm; [and] (2) disregard[ed] . . . that risk; (3) by conduct
that is more than mere negligence.'" Cagle, 334 F.3d at 987
(citation omitted).

> Failure to train can amount to deliberate indifference
> when the need for more or different training is
> obvious, such as when there exists a history of abuse
> by subordinates that has put the supervisor on notice
> of the need for corrective measures, and when the
> failure to train is likely to result in the violation
> of a constitutional right.

Belcher, 30 F.3d at 1397-98 (citations omitted).

Plaintiff has failed to allege sufficient facts indicating
that Defendant Robinson's failure to train or supervise amounts
to deliberate indifference. See Hollingsworth v. Edgar, No.
2:04-cv-935, 2006 WL 2009104, at *5 (M.D. Ala. July 18, 2006)
("To be liable for a failure to train a jailer, [the supervisor]
must have known of the need to correct alleged deprivations and
must have made the choice not to take any action."). Plaintiff
neither alleges facts showing that the need for more or
different training or supervision was "obvious" nor facts that
could be reasonably construed as putting Defendant Robinson on
any kind of notice as to a need for corrective measures. For
instance, Plaintiff has not cited to prior instances of suicide

or suicide attempts at the Grovetown facility. Likewise, Plaintiff has not set forth any facts indicating that Defendant Robinson had any actual knowledge with regard to the nature of Love's risk of suicide.[8] Furthermore, Plaintiff does not allege that Defendant Robinson entirely failed to train or supervise his officers with regard to suicide prevention,[9] but rather contends that Defendant Robinson should have simply done more based upon the sparse facts asserted in this particular case.

Based upon the foregoing, Plaintiff's § 1983 claim against Defendant Robinson should be dismissed.

### 2. State Claims

As stated above, "A suit against a public officer acting in his or her official capacity will be barred by official immunity unless the public officer (1) negligently performed a *ministerial duty*, or (2) acted with actual malice or an actual intent to cause injury while performing a *discretionary* duty." Lincoln, 231 Ga. App. at 874. Plaintiff repeatedly alleges in her complaint that Defendant Robinson ignored various "ministerial duties." This assertion is not supported by Plaintiff's factual allegations or Georgia law. See Middlebrooks v. Bibb Cnty., 261 Ga. App. 382, 385 (2003)

---

[8] The Court recognizes that Plaintiff alleges that Robinson "ratified" the jailers' conduct in this instance, but Plaintiff provides no factual support for this bare conclusion.

[9] In fact, as Defendants point out, Plaintiff's factual allegations support that the jailers at the Grovetown facility, at least in Love's case, asked questions about any potential suicidal tendencies.

(holding that training, supervision, and adoption of an official policy regarding supervision of suicidal inmates are not ministerial functions but rather are discretionary); see also Harvey v. Nichols, 260 Ga. App. 187, 191 (2003) (holding that sheriff's responsibilities with respect to the operation of a jail, the supervision of its officers and employees, and the establishment of policies and procedures were discretionary in nature).

Accordingly, the applicable question under state law is whether Plaintiff has properly alleged that Defendant Robinson acted with "actual malice" or an "actual intent" to harm Love. See Selvy, 292 Ga. App. at 704 (citation omitted). The Court finds no allegations in Plaintiff's complaint from which one could reasonably infer that Robinson acted in either manner.

### D. City of Grovetown

#### 1. Federal Claims

##### i. Constitutionality of Disorderly Conduct Ordinance

Plaintiff asserts in a conclusory fashion that the disorderly conduct ordinance under which Love was arrested is unconstitutional. Plaintiff somewhat clarifies her position in response to Defendant's motion to dismiss by declaring that she is not challenging the ordinance on its face, but rather contends it is plausible under the facts set forth in the

complaint that Defendant Harden applied the ordinance in an unconstitutional manner. (See Doc. no. 16 at 18.) The Court notes that Plaintiff's complaint does not specify or set forth the specific ordinance at issue and only refers vaguely to "Grovetown's disorderly conduct ordinance," nor does the complaint state why the ordinance is unconstitutional. Furthermore, the facts surrounding Harden's conduct and the circumstances of the arrest—and, as such, the application of the ordinance—are limited to a handful of conclusory assertions regarding Harden's lack of probable cause.

In sum, Plaintiff's claim that Grovetown's disorderly conduct ordinance is unconstitutional, both on its face and as applied, is unacceptably vague, completely lacking in factual support, and should be dismissed.

### ii. Section 1983 Claims[10]

"The law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001). "[T]o impose § 1983

---

[10] To the extent Plaintiff has asserted claims against the individual defendants in their official capacities, those claims are addressed and dismissed in accordance with this section. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); see also Sanchez v. Miami-Dade Cnty., No. 06-21717, 2007 WL 1746190, at *3 (S.D. Fla. Mar. 28, 2007) (finding that officers who allegedly falsely imprisoned plaintiff could not be sued in their individual and official capacities under § 1983 because claims against an individual in his official capacity and direct suits against municipalities are "functionally equivalent").

liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell, 392 F.3d at 1289.

Defendants argue that Plaintiff has failed to present allegations showing a municipal custom or policy that constitutes deliberate indifference, and the Court agrees.

> Foreseeability, for the purpose of establishing deliberate indifference [as to a municipality], requires that the defendant have had "subjective knowledge of a risk of serious harm," meaning, in a prison suicide case, knowledge of a "strong likelihood rather than a mere possibility that the self-infliction of harm will occur." Moreover, because respondeat superior does not attach under § 1983, the defendant himself-in this case, [Defendant Robinson] (as representative of the [City of Grovetown]) [or the City of Grovetown]-must have had this knowledge. . . . [A]bsent knowledge of a detainee's suicidal tendencies, [Eleventh Circuit] cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference."

Cook, 402 F.3d at 1115 (citations omitted).

The Eleventh Circuit in Cook noted that, at the time of the defendants' motion for summary judgment, the record in the case was "utterly devoid of any evidence" that the representative of the municipality, in that case a sheriff, had any knowledge as to a strong likelihood of suicide. Here too, in the context of a motion for a judgment on the pleadings, Plaintiff has failed to allege any facts showing that Defendant Robinson, the Chief of Police in the City of Grovetown, had any knowledge of a

25

strong likelihood of suicide within the jail, in general, or with regard to Love individually.[11]

Similarly, there are no facts in the complaint that show Grovetown may, in any other way, be considered to have had knowledge of a strong likelihood that self-infliction of harm would occur.[12] As stated above, Plaintiff's complaint contains no allegations of prior instances of suicide or suicide attempts at the Grovetown jail, nor has Plaintiff alleged that the City of Grovetown had any reason to be aware of a strong likelihood that self-infliction of harm would occur.

For these reasons, Plaintiff's federal claims against Grovetown, arising from Love's suicide, should be dismissed.

## 2. State Claims

Defendants contend that Grovetown is entitled to sovereign immunity and all state claims against it should therefore be dismissed. The Georgia Constitution provides that "sovereign immunity extends to the state and all of its departments and agencies" unless specifically waived by statute. Ga. Const. art. 1, § 2, ¶9(a), (e). With regard to municipalities, "there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations [are] immune from

---

[11] Under Cook, "even if [Plaintiff] had established [Robinson's] deliberate indifference toward suicidal inmates in general . . . this would not suffice to demonstrate the foreseeability of Love's suicide and to hold [Robinson] liable under § 1983." 402 F.3d at 1117.

[12] The Court notes that Plaintiff expressly states in the complaint that while Love's intake questionnaire initially showed that Love had demonstrated suicidal tendencies, this sheet was later revised to show that he had none. (See Compl. ¶¶ 51-57.)

liability for damages." O.C.G.A. § 36-33-1(a). "Municipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable." O.C.G.A. § 36-33-1(b). "In this regard, it is well established that city police officers engaged in city police work are performing a governmental function to which [the above mentioned] waiver of a city's sovereign immunity does not apply." Weaver v. City of Statesboro, 288 Ga. App. 32, 34 (2007); see also O.C.G.A. § 36-33-3 ("A municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law."); McDay v. City of Atlanta, 204 Ga. App. 621, 622 (1992) ("The city is not vicariously liable for the acts attributed to the police officers."). Further, as explained above, Georgia courts have consistently held that "the operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function, as opposed to a ministerial, proprietary, or administratively routine function." Harvey, 260 Ga. App. at 191.

"The party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver . . . ." Murray v. Ga. Dept. of Transp., 284 Ga. App. 263, 293 (2007). Plaintiff has not carried that burden here. Plaintiff neither

27

sets forth a basis for the waiver of sovereign immunity in her complaint nor disputes Defendants' sovereign immunity argument in her response to Defendants' motion. Moreover, the Court has found no basis for a waiver of sovereign immunity in this instance.[13]

Based upon the foregoing, Plaintiff's state law claims against Grovetown should be dismissed.

### III. CONCLUSION

For the reasons set forth herein, Defendants' motion for partial judgment on the pleadings (doc. no. 13) is hereby **GRANTED**. The following defendants are hereby **DISMISSED** from this case: the City of Grovetown, Director/Chief Al Robinson, and Sergeant Christopher Harden. Pursuant to this Court's previous order staying discovery (see doc. no. 20 at 4), the parties **SHALL** submit a proposed joint scheduling order by **5 p.m., December 30, 2010**.

**ORDER ENTERED** at Augusta, Georgia, this _20th_ day of December, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[13] To the extent Plaintiff has alleged that Love was denied access to medical care, the Court recognizes that Grovetown owes a non-delegable duty to provide its inmates with access to medical care. See O.C.G.A. § 42-5-2. However, as Defendants correctly point out, Georgia courts have held that this code section does not waive sovereign immunity. See Gish v. Thomas, 302 Ga. App. 854, 864 (2010).